Case 4:16-cv-01502 Document 47 Filed on 07/14/17 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
July 14, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **TEXAS OUTHOUSE INC**, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-01502 |
| | § | |
| **FRESH CAN, LLC dba TEXAS WASTE,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This is a trademark infringement case between two companies that deliver, service and remove on-site portable toilets, dumpster units, and restroom trailers. Pending before the Court are both parties' motions for summary judgment, as well as the Defendant's motion to strike. (Doc. Nos. 29, 30 and 43.) After considering the motions, responses, oral argument, and the applicable law, the Court finds that it must grant Plaintiffs' motion for summary judgment and grant in part and deny in part Defendant's motions for summary judgment and to strike.

**I.     BACKGROUND**

Plaintiffs Texas Outhouse and Gainsborough Waste were founded in 1994. They advertise through word of mouth and "visual recognition of the Texas Outhouse brand." Specifically, their portable toilets are beige units with green doors that bear the "iconic State of Texas mark on the front and sides." (Doc. No. 1 ¶ 17.) Plaintiffs claim they began using their mark in 2008 and registered it with the U.S. Patent and Trademark Office ("PTO") as Reg. No. 4,884,106 on January 12, 2016. (Doc. No. 1 ¶ 20.) Plaintiffs' registered State of Texas mark is pictured below, and described as:

> The mark consists of the shape of a red, segmented oval. Within the oval is the shape of the state of Texas outlined in black. Inside the shape of the state of Texas, and slightly protruding, is a star design in black and red. Over the top of

1

the shape of the state of Texas, and slightly overlapping the top, is the word "Texas" in black. Across the bottom of the shape of the state of Texas, and slightly overlapping the bottom, is the word "Outhouse" in black. Around the outside of the shape of the state of Texas, and behind the words "Texas" and "Outhouse" are the two red lines that form the shape of the broken oval. (Doc. No. 1-4.)



Defendant Texas Waste began operating in 1999 under the name "Fresh Can." In 2013, Defendant changed its name to Texas Waste Co. and designed its current logo. At that time, its portable toilet inventory included various colors. Since 2013, Defendant has purchased light blue and tan portable toilets. It has few green portable toilets, and none that is tan with a green door. In 2013, Defendant ordered 250 oval stickers; all of its other stickers are square shaped. (Doc. No. 12 ¶¶ 15-38.) Texas Waste's logo is pictured below, and the picture on the right reflects its logo on one of the oval stickers.

 

Both companies operate in the Houston area. (Doc. Nos. 1, 12.) Plaintiffs filed this suit alleging trademark and trade dress infringement and dilution, in violation of state and federal law. (Doc. No. 1.) Defendant denies all claims and responded with counterclaims, seeking cancellation of Plaintiffs' trademark.

## II.     LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### B. Lanham Act

"A plaintiff establishes Lanham Act liability by showing that the defendant uses in commerce any word, term, name, symbol, or device that is likely to cause confusion, or to cause mistake about the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. The analysis proceeds in two steps. The court first considers whether the plaintiff has a protectable right in the mark and then whether there is a likelihood of

confusion between the marks." *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 903 (S.D. Tex. 2014) (citing *Paulsson Geophysical Servs., Inc. v. Sigmar,* 529 F.3d 303, 309 (5th Cir.2008); *Sec. Ctr., Ltd. v. First Nat'l Sec. Ctrs.,* 750 F.2d 1295, 1298 (5th Cir.1985); 15 U.S.C. § 1125(a)(1)(A)) (internal quotation marks omitted).

### III.   ANALYSIS

Although many of the claims and counterclaims involve overlapping issues, the court considers each in turn.

#### A. Defendant's Motion for Summary Judgment on Plaintiffs' Claims

##### 1. Federal Trademark Infringement of the State of Texas Mark

Plaintiffs allege federal trademark infringement of the State of Texas mark (described above), in violation of 15 U.S.C. § 1114. Defendant counters that the mark is not protectable, and it should be canceled.

###### a. Protectable Right

"A trademark is defined in 15 U.S.C. § 1127 as including 'any word, name, symbol, or device or any combination thereof' used by any person 'to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). To be protectable, a mark must be distinctive. "A symbol or graphic design is not inherently distinctive unless the nature of the designation and the manner of its use make it likely that prospective purchasers will perceive the designation as an indication of source. Commonplace symbols and designs are not inherently distinctive since their appearance on numerous products makes it unlikely that consumers will view them as distinctive of the goods or services of a particular seller. Thus, unless the symbol or design is striking, unusual, or

otherwise likely to differentiate the products of a particular producer, the designation is not inherently distinctive." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241 (5th Cir. 2010) (quoting Restatement (Third) of Unfair Competition § 13 cmt. d, at 107).

"[P]roof of the registration of a mark with the PTO constitutes prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services. This presumption of validity may be rebutted by establishing that the mark is not inherently distinctive." *Amazing Spaces,* 608 F.3d at 237–38 (internal citations omitted). Plaintiffs have registered the State of Texas mark.

Before determining if the mark is distinctive, the Court must define the mark. Plaintiffs urge the Court to consider the following elements as part of the State of Texas mark: (1) the outline of the State of Texas; (2) overlaid with a Lone Star; (3) the words "Texas Outhouse" in large, black, block letters; (4) with a discontinuous red oval surrounding the logo; and (5) on a white background. (Doc. No. 37 at 4.) The Court agrees that each of these elements, including the "Texas Outhouse" text, is a crucial part of Plaintiffs' mark. The Court thus considers the mark in this dispute to be the State of Texas mark as registered by Plaintiffs with the PTO.

Courts employ two tests for trademark cases. First, *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4 (2nd Cir. 1976) classifies marks in categories of generally increasing distinctiveness. Marks may be "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. . . . The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection. In contrast, generic marks—those that 'refer to the genus of which the particular product is a species are not registrable as trademarks.'" *Two Pesos*, 505 U.S. at 768 (citing *Abercrombie & Fitch,* 537 F.2d at 9).

5

The second test comes from *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977). "In determining whether a design is arbitrary or distinctive this court has looked to whether it was a 'common' basic shape or design, whether it was unique or unusual in a particular field, whether it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods, or whether it was capable of creating a commercial impression distinct from the accompanying words." *Seabrook Foods*, 568 F.2d at 1344 (citations omitted).

The Court finds that the State of Texas mark—with all the elements discussed above—is inherently distinctive, under either test. If the crucial elements of the mark included only the Lone Star and the shape of the state of Texas, the mark would be generic or descriptive at best, under *Abercrombie*. It would thus need a secondary meaning to be protected. *See Two Pesos*, 505 U.S. at 769. (Doc. No. 37 ¶ 27.) "Secondary meaning occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008). Similarly, under *Seabrook*, a mark defined merely by the star and state shape would not be "capable of creating a commercial impression distinct from the accompanying words" 568 F.2d at 1344. But because the Court views the State of Texas mark in a narrower fashion that hinges on the text "Texas Outhouse," it finds that the mark is distinctive, and the Court does not need to engage in an inquiry about secondary meaning.

b. **Likelihood of Confusion Between the Marks**

To prevail on their infringement claim, Plaintiffs must also show there is confusion between the marks. *See Two Pesos*, 505 U.S. 763 at 769 ("It is, of course, also undisputed that liability under § 43(a) requires proof of the likelihood of confusion."). "Likelihood of confusion

6


is synonymous with a probability of confusion, which is more than a mere possibility of confusion." *Bd. of Regents of the Univ. of Houston Sys. on Behalf of the Univ. of Houston Sys. & Its Member Institutions v. Houston Coll. of Law, Inc.,* 214 F. Supp. 3d 573, 584 (S.D. Tex. 2016) (internal citation omitted). "When assessing the likelihood of confusion, [courts] consider a nonexhaustive list of so-called 'digits of confusion,' including: '(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion.' Courts also consider (8) the degree of care exercised by potential purchasers. No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Smack Apparel*, 550 F.3d at 478 (internal citations omitted).

"A finding of a likelihood of confusion is a finding of fact." *Univ. of Houston,* 214 F. Supp. 3d at 584 (citing *Paulsson*, 529 F.3d at 306). A jury should assess the evidence and weigh these factors. Plaintiffs have produced evidence that indicates that a reasonable juror could find the two marks similar. Furthermore, the juror, not the judge, should weigh the credibility of testimony as it concerns Defendant's intent. *See Reeves v. Gen. Foods Corp.*, 682 F.2d 515, 518–19 (5th Cir. 1982) ("it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences and determine the credibility of witnesses"). The Court denies summary judgment for Defendant on Plaintiffs' federal trademark infringement claim.

In reaching this decision, the Court makes no suggestion about its own views on the

strength of Plaintiffs' claim. Plaintiffs' evidence regarding confusion is limited.[1] Furthermore, the words "Texas Outhouse" are a primary factor in the Court's finding that Plaintiffs' mark is distinct and protectable. Given the differences in text between the two logos, the Court anticipates a jury will struggle to find confusion between the marks. Nonetheless, this is the jury's decision to take.

### 2. Federal Trade Dress infringement

Plaintiffs allege that Defendant has also infringed upon their trade dress, in violation of 15 U.S.C. § 1125(a). "The 'trade dress' of a product is essentially its total image and overall appearance. It involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Two Pesos*, 505 U.S. at 765 n.1 (internal citations and quotation marks omitted). Plaintiffs define their trade dress as: the State of Texas mark; tan toilets with green doors; the product name; and the reference to "Texas" and waste management. (Doc. No. 1 ¶ 22.)

Courts analyze trade dress and trademark claims similarly. For the reasons discussed above, the Court finds that Plaintiffs' trade dress—the State of Texas mark plus the tan porta-potties with green doors—is distinctive.

Plaintiffs have not shown evidence of trade dress infringement because Plaintiffs' and Defendant's color schemes are different. Plaintiffs admit that their toilets are tan with green doors. (Doc. No. 37 ¶ 46.) It is undisputed that Defendant has toilets that are entirely green or tan, but none is tan with a green door. (Doc. No. 29 ¶ 9.) Plaintiffs stress that their toilets are tan on three sides, and a customer could easily confuse the products unless she could see the green

---

[1] Plaintiffs show confusion through consumer surveys and an affidavit from Plaintiffs' employee, Karen Dunlap (Doc. No. 37-3). Defendants seek to strike both pieces of evidence. The Court addresses the admissibility of the evidence in Section II(C).

door. However, as Defendant does not own or use any toilets of the same color scheme as Plaintiffs', the trade dress claim may not survive. The Court grants summary judgment for Defendant on Plaintiffs' federal trade dress infringement claim.

### 3. Federal Trademark Dilution

Plaintiffs accuse Defendant of diluting and tarnishing the State of Texas trademark and the Texas Outhouse trade dress. Under 15 U.S.C. § 1125(c)(1), "the owner of a famous mark that is distinctive . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). "'[D]ilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B). "'[D]ilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C).

As discussed above, the Court doubts that the distinctiveness of the State of Texas mark—which contains the words "Texas Outhouse"—has been impaired, but it recognizes that a jury could make such a finding. In contrast, Plaintiffs have provided no evidence showing harm to the reputation of their mark. Although Plaintiffs have argued they can present such evidence at trial (Doc. No. 37 ¶ 56.), they have failed to create a question of material fact with respect to tarnishment. The Court denies summary judgment for Defendants on the trademark dilution

claim, only as it applies to blurring of the mark.

### 4. Trademark Dilution under Texas Law

Under the Texas Business and Commerce Code, "the owner of a mark that is famous and distinctive . . . is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark." Tex. Bus. & Com. Code § 16.103. This language mirrors the Lanham Act, and the Court reaches the same conclusions as for the trademark and trade dress infringement claims. A jury should determine if Defendant's logo constitutes a use of Plaintiffs' State of Texas mark.

Plaintiffs also allege that Defendant's conduct is gross, wanton and willful, and thus shows unfair competition under the common law. Like the statutory trademark infringement claims, the "common basis of the torts of unfair competition and trademark infringement is a likelihood of consumer confusion as to the source of the goods." *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 735 (Tex. App. 2000). The Court has already found that there is a question of material fact as to confusion about Plaintiffs' trademark but not as to the trade dress. The Court denies summary judgment for Defendant on Plaintiff's trademark dilution claim under Texas common law and the Texas Business and Commerce Code § 16.103, but grants summary judgment as to any claim for infringement on the trade dress.

## B. Plaintiffs' Motion for Summary Judgment on Defendant' Counterclaims

### 1. Cancellation of Trademark

Defendant asks the Court to cancel the State of Texas trademark on the grounds that the Lone Star and state outline are generic symbols and were already used in commerce, that the application was filed in bad faith, that Plaintiffs falsely represented that they were the first to use

the Lone Star atop the outline of the state of Texas in the waste industry, and that Plaintiffs committed fraud before the PTO. (Doc. No. 12 ¶¶ 80-86.)

For reasons stated on the record at the oral hearing, the Court finds that Plaintiffs' State of Texas mark is distinctive and was not filed in bad faith. Plaintiffs did not represent that they were the first to use the generic symbols of the Lone Star and the outline of the state of Texas. Rather, they registered the State of Texas mark in its entirety. The Court grants summary judgment for Plaintiffs on the cancellation of trademark counterclaim.

### 2. Unfair Competition

Defendant has brought a counterclaim for unfair competition, "to stop the assertion of baseless and invalid trademarks and the like against Texas Waste in an attempt to disrupt and interfere with Texas Waste's business." (Doc. No. 12 ¶¶ 91-97.) Defendant argues that Plaintiffs know or should know that the Lone Star and shape of Texas do not merit protection. The Court has found that Plaintiffs have a valid trademark, and they did not act in bad faith in trying to protect it. The Court grants summary judgment for Plaintiffs on Defendant's counterclaim for unfair competition.

### C. Motion to Strike

Defendants move to strike three witnesses and/or pieces of evidence. (Doc. No. 43.)

### 1. Expert Report by Robert Wallace

Plaintiffs have designated Robert Wallace as an expert and submitted his report as part of their motion for summary judgment. (Doc. No. 30-1 at 2-13). Mr. Wallace's report discusses the similarities between the parties' marks. He considered each digit of confusion between marks, based on his own professional opinion. Mr. Wallace also designed and fielded an on-line survey to determine likelihood of customer confusion.

Defendant seeks to strike Mr. Wallace's report and his designation as an expert. Defendant points out that Plaintiffs did not produce any expert report until the filing of their motion for summary judgment on May, 30, 2017, weeks after the agreed-upon deadline of April 10, 2017. The Court held a hearing on Plaintiffs' request for an extension of the deadline to file their expert report, and deferred ruling on Plaintiffs' request until after the motions for summary judgment were filed. Defendant argued at that hearing, and maintains, that there was no good cause for the late filing and it is prejudiced by receiving the report at this point in litigation. (Doc. No. 43 ¶ 1.) Plaintiffs respond that Defendant has had ample notice and time to depose Mr. Wallace, should it wish to do so.

The Court has the discretion to strike the designation of Robert Wallace. "Unless otherwise stipulated or ordered by the court, this disclosure [of expert witnesses] must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). *See also Winfun v. Daimler Chrysler Corp.*, 255 F. App'x 772, 774 (5th Cir. 2007) (district court may strike an expert designation when not accompanied by an expert report).

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Court considers the following factors to determine if there is good cause: "(1) the explanation for the failure to timely move to extend deadline; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *Guffy v. Brown*, No. BR AP 15-3229, 2016 WL 7439431, at *2 (S.D. Tex. Dec. 27, 2016) (citing *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009); *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)).

The Court finds that the majority of factors weigh in favor of allowing Mr. Wallace's report to come into the summary judgment record. Mr. Wallace's report—especially the survey on customer confusion—is important to an assessment of the claims on the merits, and therefore the amendment of the expert report deadline is also important. The Court can limit prejudice to Defendant by allowing Mr. Wallace to be deposed, and will extend the discovery deadline for Defendant only by thirty (30) days. Despite this ruling, the Court notes its disapproval of Plaintiffs' repeated extensions of the expert report deadline, and recognizes the inconvenience Defendant has suffered.

### 2. Affidavit of Karen Dunlap

Defendant also seeks to strike the declaration of Karen Dunlap, an employee of Plaintiffs. In her declaration, Ms. Dunlap attests: "several customers have expressed that they thought Texas Outhouse and TWC [Texas Waste] are one and the same." (Doc. No. 37-3 ¶¶ 3-4.) These statements are hearsay. *See* Fed. R. Evid. 801(c). Although Ms. Dunlap may comment on other ways that she observed customer confusion, her reporting of customers' statements is inadmissible. The Court strikes the portions of Ms. Dunlap's declaration that include statements by Plaintiffs' customers.

### 3. Letters from Plaintiffs' Customers

Plaintiffs included in the record seven letters from customers, which they had submitted to the PTO as part of their trademark application. (Doc. No. 30-1 at 15-21.) The letters are form documents that customers signed, stating they were familiar with the Texas Outhouse logo. Defendant objects to the admission of the letters as unauthenticated and hearsay (Doc. No. 37-1). The Court agrees that these letters are hearsay and do not fall within any exception. Furthermore, the Court did not rely on the letters in its finding that Plaintiffs' State of Texas mark is

distinctive, and the letters are irrelevant to a consideration of likelihood of confusion. The Court strikes these letters from the summary judgment record.

## IV. CONCLUSION

The Court hereby: **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment (Doc. No. 29); **GRANTS** Plaintiffs' motion for summary judgment (Doc. No. 30); and **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to strike (Doc. No. 43).

**IT IS SO ORDERED.**

Signed at Houston, Texas on this 14th day of July, 2017.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE